BROWN, Chief Judge,
dissents.
| , Property in multiple sections in Webster Parish was owned by Effie Smith Connell and her two children, Billy Jean Smith and Betty Smith Robinson. The ownership was one half to Effie Smith Connell and a fourth to each of the children. In an exchange deed in 1976 with Betty Robinson, Billy Smith obtained her acreage in Section 8. In an exchange deed in 1980, Billy Smith obtained his mother’s ownership interest in Section 8. In each of these exchange deeds the mineral rights were reserved. In May of 1996, Effie Smith Connell donated all of her mineral interest in Section 8 to Billy Jean Smith, save and except reserving for life the proceeds from two particular wells. Shortly thereafter in May 1996, Billy Smith donated a portion of the mineral interest he received from his mother in Section 8 to his three children, Gary, Mark and Rose Marie Smith McDonald. He later revoked the donation to his daughter Rose Marie.
In January 2001, Effie Smith Connell died. Later in 2001, Betty Smith Robinson filed a petition to open the succession and to annul the 1996 donation of Effie Connell’s one half mineral interest to Billy Jean Smith. Betty Robinson died in 2002. In 2003, Samson acquired an interest as lessee and became responsible for the payment of royalties. In 2004, Samson was notified of the annulment action and suspended payment for Effie Smith Connell’s ½ royalty interest on the existing wells in all sections. In January 2005, the trial court rendered judgment annulling the 1996 donation to Billy Smith. Samson was notified of this judgment in February 2005. Thereafter, Samson completed six new wells in Section 8. As to [2these new wells, the royalty payments were not suspended but paid to the Smiths, that is, to Billy Jean, Mark and Gary Smith. The third child of Billy Smith, Rose Marie, was not included.
In October 2006, Samson filed a Concur-sus proceeding. In May of 2007, the Succession of Effie Smith Connell filed this action against Samson to terminate the mineral leases and/or to recover the royalty owed plus penalties and attorney fees. As to the Concursus action, the trial court specifically found:
This court has ruled on numerous occasions that the Concursus proceeding was appropriate and monies relating to the production of the wells at issue were deposited into the registry of the Webster Parish Clerk of Court. Subsequent to this point in time, additional wells were drilled and placed into production. Samson utilized “pay decks” and distributed the royalties in accordance with the way the royalties had been distributed during the period of time that the donation was considered valid. Experts for both sides agree that the royalties paid utilizing the wrong pay decks amounts to $1,801,149.13.
When all the legal smoke cleared the only issue was the $1.3 million paid by Samson to Billy Jean, Gary and Mark Smith (“the Smiths”) in connection with the six new wells completed in Section 8. As to the sufficiency of notice of non payment of royalties to the Succession Of Effie Smith Connell, I agree with the majority that Samson received appropriate notice. In.its.Concursus petition in 2006, Samson basically admits receipt of this information. Because the donation to Billy Smith was invalid, Effie Smith Connell’s estate owned her one half interest in the minerals in Section 8. Thus, Billy Smith’s heirs would own one half , of the minerals in Section 8 and Betty Smith Robinson’s heirs would own the other half (they both already owned one fourth). The Smiths were entitled to payment of one half *980 | factually a little less than ½ as Rose Marie did not receive any of these royalties). Neither the trial court nor the majority recognized the Smiths’ interest and that they were paid their share plus the amount owed to the Robinson ½ interest, as well as the interest of their sister Rose Marie Smith McDonald (Shaw).
In Hall v. James, 43,263 (La.App.2d Cir.06/04/08), 986 So.2d 817, this court found that plaintiffs (Hall) should have filed suit only against Samson for overpaying royalties to the wrong party (James) and it would then be up to Samson to file a third party demand against that party. As in the case sub judice, in Hall v. James, Samson was a defendant and was represented' by the same attorney. I note that Hall v. James was decided after the Con-cursus and Succession petitions were filed but before the present case was tried. In Hall, Samson was liable only for the interest owed the unpaid co-owners. In our case, Samson would owe only the amount of the overpayment to .the Smiths — not $1.3 million. It would be unfathomable for Samson to pay the Smiths a second time for their interest, and a third time as penalties. Samson actually paid the Smiths timely, a fact that the trial court and the majority finds to be of no consequence.
The disputed payments were made to the Smiths, which included Mark Smith who was and is a co-administrator of the Succession. The Smiths were knowledgeable of the suit to annul the donation, as well as the judgment annulling the donation. They also knew that the Succession had been opened and was under administration. Since 2006, Mark Smith was a co-administrator. When they received the $1.3 million, they did not turn it Dover to the Succession. Under these circumstances, I would reverse the award of penalties and attorney fees against Samson.